Our next case is Macro, Inc. v. Bandai Namco G.A. Mr. Lankin, you saved five minutes of your time for rebuttal. That's right. All right. You may proceed. May it please the Court. The invention here improves an inherently technological industry process. Lip-syncing computer-generated 3D characters so their mouths move in sync, so they appear to speak the words in a pre-recorded manuscript. That produces a tangible result. It takes static character images, static characters, and it converts them into moving images, moving images that appear to speak realistically. It is technological. It teaches how a computer can displace human judgment at thousands and thousands of keyframes. The human judgment was previously necessary to achieve adequate quality. What's the best place in this specification for the idea that what the humans who were sitting at the terminals before this system came into place were doing something that would not be described as following their own rules? You make a big deal about intuitive artistic judgment versus rules. If they were following rules, then you have a greater challenge of saying, oh, we're just putting human activity onto the computer. Right. Your Honor, I don't believe the specification goes and explains how a human artist went through and used their judgment to remove sliders to adjust a face like an artist might mold clay until they had that aha moment. It's just right. But we do know that they're not doing calculations in their head saying, you know what, I think that because the B is next to an L, we really think we should reduce the morph rate for the L a little bit so it's not fully articulated. In fact, we'll go from 120.3.7.0 to 120.1.5. That's simply not how the process works. The computerized process, the method we claim here is entirely different. And it's different for a reason. It's different because it allows the computer to replace that judgment. And the results are actually somewhat different. The human being comes out with a slightly more artistic method. It's not as uniform, but it is a higher quality result. And it's not just the application of rules here and specific rules that lead to this result. If you look at the claim, it has not merely improving this technological process, producing this physical output, not merely taking this and automating it. It goes and gives a very specific process for achieving that result that is wholly unconventional in some respects. Can we talk about a doctrinal point that I know we and you all need to make your arguments in, which is this two-stage framework where under one view stage one is meaningless because there's an idea in everything and it can't be that. So how do we decide whether this production of a physical thing, in fact a moving physical thing, is directed to an abstract idea or merely has one of those in it because, at least under some views, some rule might be an abstract idea? Right. I think, Your Honor, that the Supreme Court has given us no guidance on that. But when you are producing a physical object, when you're actually showing a production process to make something different, it's very hard to find an abstract idea. I think when the district court said, look, this doesn't appear to be an abstract idea. Mayo's description of deer is not quite consistent with that, is it? I mean, doesn't Mayo, and I'm not remembering, but I thought Mayo, which is obviously not the last word in the creation of this framework, describes the, is that the Arsenius equation? Uranus equation. Uranus, sorry, as an abstract idea but then says, oh, there's lots more going on in deer. Or does Mayo describe deer as sort of falling off at stage one? No, it's not at all clear where deer falls off because deer could fall off at either stage because, on the one hand, it's improving an inherently industrial process to cure rubber, to make it come out more precise. And you have lots of different steps and processes. And the fact that you happen to use a computer and calculations at one step doesn't make it an abstract idea. On the other hand, deer also could fall out at step two because deer has much more than just the Arrhenius equation in it. It has the uncured rubber, it has the molds, it has the repeated calculations, it has opening the molds at the proper time. Does it matter that there's something physical and tangible in deer that has been affected? I think that the fact that it's part of an industrial technological process tends to suggest to us that this is at step one, you're done with it. And I think that's true in deer. I think it's also true here. What appears on our screens today, the images that we look and that entertain us every day, is an inherent part of a technical process. It's what the entertainment industry produces. These animated characters that do not exist in nature but look and talk as if they are speaking with us. The district court in this case in making this particular decision stripped out all of the elements of the claims that he deemed were covered by prior art. Is that legal error? And if so, why and what's the legal basis? Sure, I think it is legal error because step one simply asks the question of what is the underlying abstract idea? When you begin the process of stripping out something that's purely conventional, is the step two, it's not everything the prior art, it's what's purely conventional. Step one says, is this really the type of thing... Well, is it appropriate in step two? In step two, when you've already decided that it's directed at an abstract idea, and I don't think we're directed at an abstract idea here. I think even the district court's description of the idea is very concrete and it didn't capture the whole invention. But when you're at step two, you do back out everything that's purely conventional and there's a reason for that. The court says, look, we're not going to... But you identify whether particular applications are conventional, but do you strip them out and then review what's left? Well, you're right. You look at each one and if the step that you're looking at is purely conventional, you don't look at it in isolation. But you do go back and look at the coherent combination of all the steps and you ask, is that combination novel, is it a point of novelty? I shouldn't say point of novelty. Is it an inventive concept that adds something more than what the underlying abstract idea here? I guess my question is, in a section 101 analysis, is a district court required to consider the claims as a whole? Absolutely. I think Deere is very clear on that, that you do look at the individual inventive concepts in individual steps and then you assemble everything and you say, does the whole add you something that goes beyond any underlying abstract idea? And I think the district court failed to do that here. And if you do that and you don't ignore all the critical limitations, you see that there is a huge number of inventive concepts here. And I'm not talking about just the use of rules in a particular type of rule. That is, rules based on phoneme sequence, what sound is near and adjacent to what sound, or rules based on timing of phoneme sequence, how fast that sequence works. It's also the way that it applies those rules. It's what it produces using those rules before it becomes an intermediate stream, final stream, and then finally animated content. So starting with just the application of the rules, it applies the rules to a subsequence of phonemes. So it takes a set of phonemes and it looks through those phonemes as a group, like a window passing through this set. And that's important because you're trying to figure out what phonemes are near what phonemes, what sounds are near which sounds, and what is the group as a whole. How long does it take for that group as a whole to be set? So apparently the parties agreed that a good part of the applications here was conventional. Your Honor, I don't think that there's a good part that's conventional. There are pieces that are conventional. The invention appears to advance an existing technology. That's correct. The existing technology. I don't want to call it prior art. The existing technology itself apparently was based on conventional type activity. The existing technology, I would concede. When I look at the video that you submitted, you've got to look really hard to see the difference. I thought it was a minute difference between what was added to the existing technology. It was not a lot. I'm not saying that's not enough. I think the difference in the quality of the output, the flappy-lipped character, and the characters that move their lips, as you would expect, is a huge difference in quality. But what matters here is what are the claims at. So why don't I just sort of walk through what some of those... I was just going to say, before you do that, I'm also struggling with the idea of when is something, when is a claim directed to an abstract idea, and what does that mean? And we have a couple different things, like that California Institute case said, you look at what is the purpose of the invention, and is that purpose abstract? Are you able to say, I mean... So here, if we were to say, yeah, the district court's methodology was wrong, what is it that the district court should have done? I think the district court made a mistake in not following what are first impressions. It looked at it and said, this does not appear directed to an abstract idea, because it's an improvement to an existing technological process that is tangible and produces an output. I think that it really is something of a gestalt test. I don't think you ask, what is the result you're trying to achieve? But if you're going to come up with something, and you look at what the district court said, the district court said, well, it's rules-based, applied to more weight sets and, I think, vectors, in order to produce 3D animation. Well, that's really concrete. And if you add to that what's actually in the claims, then it becomes clear, by the time you get to step two, that we're well beyond even whatever that might be, if you want to call that an abstract idea. I think it's critical, if I answer your question, go to what's added, and there's four pieces... You are into your rebuttal time, just to give you a heads-up. I apologize. I'm going to focus on just one piece, then. It's derived from those specific types of rules, which are not conventional and not in the priori. The timing of phoneme sequence and the phoneme sequence itself. It's the intermediate stream. This has a particular type of stream that must be produced using those rules. And it has two pieces. Morph weight sets and transition rules. The morph weight sets are, the L looks different from the B because it's... It looks different than it otherwise would look, because it's next to a B, or because it's said very quickly in a fast word. The transition rules say, how do you get from the B to the L? What kind of curve are you going to use? Is it linear? Do you move something out in terms of timing? Those transition rules, the idea of having an intermediate stream with transition rules in it that tell you how to get from one weight set to another, nowhere in the priori. The district court admitted it. It's not conventional by any means. And that's just one of the multiple pieces that appear in this ordered combination that differentiate it and show the inventive concept on top of these innovative rules, two genus, phoneme sequence, and time of phoneme sequence. If I could reserve the remainder of my time for about a minute. Thank you. Counselor Arminto. Yes, may it please the court. I want to start by talking about the abstract idea here. The abstract idea is using rules to automate the conventional process of lip sync using morph targets. The patent itself, in column two, describes the prior art common practice of using the morph target approach. It goes on to say that the point of the invention is to automate that process. The claims and the specification are consistent that what the invention is... Can I ask you this? And I guess it's a version of the other side's automatic pilot example. Or I've always thought about the facial recognition example. I have no idea what's going on inside my brain when I recognize your face. And it seems to me a kind of unbelievably patentable invention for somebody to figure out a system of rules that would allow a computer to automate that process. So what is different here from that? Or do you want to contest the premise? No, I agree with that premise. But this is fundamentally different, and here's why. In the case of autopilot or facial recognition, if someone were to come forward and say, here is how we do it. Here are the rules that you would apply. And apply those rules, then I think we're falling into the category of patentable subject matter. What this patent is directed to and what these claims capture is the idea of using rules without providing any more specificity. They are essentially taking an autopilot and saying, fly the plane automatically using rules that consider conditions and timing. That would be the claim. That itself is the idea of autopilot, but doesn't actually contribute anything to the art. Because lots of people probably think, wouldn't it be nice if I could use a computer to do this for me faster, more efficiently, or whatever. That is not patentable subject matter. Except on the assumption that one of the possible claim constructions here, and I guess we don't have claim constructions, is the actual production of the right kind of visual image, one that's moving and looks pretty cool. And on the assumption that the specification enables production of that, then the analogy in your autopilot example is a patent that says use autopilot and the specification has a whole lot of specific rules that in fact enables the plane to fly without a pilot on the rudder or whatever it's called. The problem, Your Honor, is that there's a mismatch between enablement and Objection 101 because of the scope of these claims. So I would agree with you that if the claims were directed to a scope and the scope of that was fully enabled by examples in the specification, then we might have a different situation. The problem we have is that the claims seek to capture the idea of using rules. And if you're going to claim the idea of using rules generically... Right, but let's assume now that there is a possible set of claim constructions that substantially narrows the kinds of rules in some of the ways that Mr. Lampkin described. Fair enough, Your Honor. So there's two responses to that. The first response is, of course, that was an argument that was never presented below. And so I think to the extent that we have this sort of creep where claim construction has... we went through the full claim construction process before the District Court, with 101 being very much in the forefront of both parties' mind. It wasn't like this was a surprise. Okay, so were there claim constructions adopted? Yes, Your Honor, there were. The claim construction order is at page A4009 of the appendix. And we went through a full claim construction process before Judge Wu at the District Court. And the limitation set of rules was contested between the parties and was construed by the court. What we were arguing was that the set of rules had to be embodied in a single piece of software. McGrow argued that there should be... I'm sorry, that's not at least the focus of my concern about claim construction. Fair enough. It's about the sequence and timing business. Exactly, Your Honor. So fair enough. My point is that we went through the whole process and there was never a dispute on sequence and timing. And the reason for that is the claim says on its face that sequence and timing have to be considered. Nobody disputes that. Any lip sync would have to consider the sequence of the phonemes, what comes before what, because that's how our mouth moves, and timing so that you can synchronize the mouth movement with the speech in time. Well, except there... I'm thinking of, I guess, a case I was recently involved in involving signal processing. And there's a question about signal-dependent noise and correlated noise. And those added something pretty significant to just a bunch of, you know, read-head readings of the magnetic area, and it added something, in fact, quite dramatic to say what you're doing, what you're finding, depends on what came before and what came after. So it's just not right that the word sequence doesn't necessarily mean more than one darn thing after the next. Well, Your Honor, I think that might be true in that case. In this case, that's not true. Because if you look at the patent specification and the claim construction, or I'm sorry, the Section 101 order from Judge Wu, what the patent describes is the idea of looking at what the sequence of phonemes is and then picking sort of key points in time that are called key frames and then interpolating between them. That generates an intermediate stream, and then you would interpolate further to get to the final stream. The sequence is simply the order in which the phonemes appear. Even in the current version of the claim construction position, which was never advocated below, there's no identification of some secret sauce to sequence that changes the analysis. And when you say never advocated, are you putting aside or including what I guess I'm remembering from their gray brief, maybe an oral argument passage, where he said, it actually matters what the previous phoneme was? I think the difference is, Your Honor, when I say that, I mean they never advocated for a particular claim construction. I agree that at the 101 hearing, by the time things evolved, they raised the concepts of sequence and timing. And Judge Wu actually addressed that in his ruling. And what he found, if you look at A-17, he found that the rules for defining morph weight sets as a function of timing are not just, let me strike that, rules of defining morph weight sets as a function of phoneme sequence are disclosed within the prior art. Timing is not, because that's a matter of the artist's choice of key frames, but that no specific timing rules are required. So the district court judge considered the 101 oral argument about timing and sequence and found that timing doesn't add anything, because of course you need to look at the key frames in time and then interpolate between them. That was conventional. It was well known. It doesn't add anything, because that's simply a necessary part of any lip synchronization. You must know what the sequence of phonemes are and what the timing is between them. In your brief, you say that the claims are directed to a number of different abstract ideas. How does that provide any certainty when you don't figure out which abstract idea? How is one to know what the test is for determining if the claims are directed to an abstract idea? I don't remember saying it exactly that way, but I trust you that we did. And I think what we meant by that was that you have to look at the different layers of abstractness. And so exactly what level you look at the claim in, I think, is not always completely clear. The best that I can do for you is to suggest that we look at the precedent on where claims have been found to be abstract and see how close this claim comes to that. I admit this claim is more dense than a lot of claims that are tested under Section 101. It's not a very high-level business method claim. It has dense terms of art. But that doesn't necessarily mean it's not abstract. If you were to look at Parker v. Fluke, Parker v. Fluke is a physical process for catalytic conversion. What the court was looking at there Parker involved in the background such a physical process. The claim didn't claim anything about the physical process, except that the value calculation would be used in something. That's correct, Your Honor. But it was basically an instruction to apply that in a physical process. I think I want to differ with that. I don't think it said, apply it in that process. It said, when you're doing this process, calculate this value. That might be true. But I'm not sure how I see that as being different from the current claim. And here's the reason why. The current claim is basically taking a set of steps that happen on a computer. Now, we agree that the end result will almost certainly be applied to actually render an animation. But essentially, it's just math. It's two pieces of input, the time-aligned phonetic transcript, which is the time-aligned voice, and then the phoneme sequence, which is the sequence of phonemes that are visual. Why wouldn't the autopilot situation just be math? I think the autopilot situation would just be math. And if the claim was directed to the idea of using rules associated with timing and weather conditions to do autopilot, that claim would also be unpatentable. The issue is, you have to say what the rules are or somehow contribute something more than the idea of using rules. And on that point, I would point out. Could anything have been done to the claims here to make them patent eligible? Yes, Your Honor. I think there could have been. So I think a couple of things could have happened. And Judge Wu contemplated this, because he was very concerned about making sure we were really strictly applying the Supreme Court's precedent. And he contemplated the question of, what would you do here? And he said, look, if the rules were directed to something more specific, so for example, if they actually specified what the rules might be that consider timing and sequence to generate something, what that secret sauce is, what the invention is, beyond the idea. Each and every viseme and phoneme, and you'd have to have it for every sound? No, Your Honor. I think what you could do is you could consider a variety of factors that would go into it, and then you could claim those. You could also do a means plus function claim if you wanted to specify specific algorithms that you have. There are things that could be done to focus in on what the actual contribution was, in terms of telling you how it is that you go through the process of flying the plane, or how it is that you go through the process of recognizing someone's face. What's your non-infringement argument here? It doesn't relate to the rules limitation as it's defined. The way the rules limitation is defined, which is just considering timing and sequence, I don't think there's any process for facial animation or lip sync that wouldn't fall into that category. Our non-infringement positions are based on different limitations, specifically the morph weight sets limitation. I'm concerned that maybe Judge Wu added a third step to the Section 101 analysis. He says on A14, he says, however, for purposes of Section 101 analysis, it's not enough to view the claims in isolation. I take that to mean as a whole. And then he goes on and says, what we have to do is strip out anything that's conventional, or he says the prior art, that falls under prior art, which has a technical meaning, which I don't equate necessarily prior art and conventional activity to be the same in all circumstances. But he says, we strip out everything that falls under the prior art, and then we see what's left. Isn't that error? What's the legal basis for that type of analysis? I think, Your Honor, that that analysis might not have been the most clear way of looking at it. And I think that when you actually look at what he did, though, he did look and think about what the abstract idea is, and he focused in on the ideas of automation using rules, which the patent describes as the core of the invention. So when you think about what the claim is directed to, of course you have to look at what is the overall concept of the claim. Where did he do that, though? Where did he consider the overall concept of the claim? He didn't use those words, but I think if you look at A17, Your Honor, at the top of the page, he says, plaintiff's expert opines that a central part of the patents is using morphoid set representations of the facial shape coupled with rules, including explicit and distinct timing rules, to generate key frames. Everyone appears to agree with that characterization, except defendants point out that no particular explicit and distinct rules are required by the claims. So that's an articulation of what the overall concept of the claims is. As agreed between the parties, then the question becomes, does that overall concept, is that something beyond abstract? And because the claims don't actually claim the rules, they simply give you the idea of the rules, that is an abstract concept under Step 1. So Mr. Lampkin invokes, what is it, I guess the AbbVie case, but he invokes it for a principle that, unless you tell me otherwise, I'm prepared to assume is fairly common, which is that it is commonplace and quite permissible to claim certain inventions in genus form and not recite each particular embodiment in the claims. I assume you don't doubt that claiming can be done that way without making the genus automatically abstract? No, Your Honor, we wouldn't. But in that case, you would still have to put some bounds around the genus in order to take it from abstract idea. But why doesn't that end up being, depending in this case on a, what now at least appears to be a claim construction dispute that hasn't been resolved? I think the reason for that is quite simple, Your Honor. The idea that it hasn't been resolved, I think, accepts two premises of their arguments that I would contest. Let's even say it hasn't been raised, but in any event, there is a dispute about how many constraints there are on the rules at issue. I'm in rebuttal time. May I respond to that question? Thank you, Your Honor. The first point is, Your Honor, that assumes that the district court didn't think about that. And if we look at A18, the district court clearly thought about that question. What he says at line 15 is, at the hearing on the motion, Plaintiff emphasized that the rules inventively take into account the timing of the phoneme sequence. But the specification states clearly that in operation and use, the user must manually set up default correspondence rules that specify the durational information needed to generate appropriate transitionary curves. Then he goes on to say that the evidence that they cited is only an example of the set of rules that could be used for illustrative purposes and that many other rules could be specified according to the methods of the invention the claim purports to cover all such rules. That's point one. And the second point is, Your Honor, even if they had some sort of special sauce of what these timing and sequence rules are, that somehow generate a claim construction dispute beyond what was presented to Judge Wu, and that they were allowed to present that claim construction dispute beyond what was presented to Judge Wu, they haven't explained why that would actually change the outcome in terms of Section 101. Thank you, Your Honor. Thank you, Your Honor. Mr. Lampkin. I'm going to restore you back to five minutes. Thank you, Your Honor. I'd like to begin by addressing the concept of the rules that are at issue here. At claim construction, what was addressed was not the meaning of the phrase phoneme sequence and timing of phoneme sequence. It was just the first set of rules. Throughout this case, at page 21 of our reply brief, we have maintained that when the claims say phoneme sequence and timing of phoneme sequence, that means the relationship between the phonemes, what is near what, and how fast the group of phonemes is spoken, not just the right phoneme at the right time. As a matter of claim construction, I think that is the correct answer. If Judge Wu thought otherwise, he just simply erred. At claim construction, he didn't think that it was just any rules, frankly, because he said the defendant's argument of phoneme sequence, right phoneme at right time... Are you reading from something I can look at? Yes. A4171. It's the claim construction hearing. 4171? It says, defendant's argument ignores that the claims themselves set out meaningful requirements for the first set of rules. They define morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence. So he understood that this was a meaningful limitation. It wasn't just rules like just put the right phoneme at the right time. And it said in A12, he says, the asserted claims do not seem to cover any and all use of rules for 3D lip 3D dimensional lip synchronization. Judge Wu knew that there was more. And that's why he's found that the timing rules weren't in the prior art. If it were just putting the right phoneme at the right spot, page A17 says it's not in the prior art. That would be in the prior art. Everyone knows you put the right phoneme in the right spot. It also renders a lot of the claims language completely superfluous, including the word sequence, because you would just say phoneme and time of phoneme. In fact, you don't even need the word phoneme. You would just simply time of phoneme. Because if the phonemes are the right time, they're going to be in the right order. They'll be in the right sequence. If they're in the wrong sequence, they'll be in the wrong order. There is not a good claim construction here which says this just means put the right phoneme at the right time. Instead, there's a very specific genus of rules. And that genus, we claim, is you have to look at the sequence, what is near what, and you have to look at the time, how fast that group works. And that's pretty clear from the third claim element on page 11 of our reply, which explains how it's applied. You look at a group of phonemes, a subsequence, and you're looking at the group like a window looking past it as a whole to determine what's near what. If you're just looking at individual phonemes and saying what follows what, you wouldn't look at them as a group. You wouldn't look at them as a subsequence. If you wanted to know just how long each phoneme lasted, you wouldn't look at them as a subsequence. It makes that completely surproof for us. If we had invented not a process for automatically animating these figures, but an industrial process, for example, for catalyzing certain chemical reactions, we wouldn't claim necessarily every chemical compound that said use this as the catalyst and just list them in page and page and page of the appendix. You would claim it as a family, as a genus, as a group. And that's what we've done here. In fact, if we had to list every single one, B followed by L, V followed by U, etc., that would make it completely unworkable. People would not be able to go through the length of the appendices and figure out whether or not they're infringing. In the end, when you're looking at this case, the ultimate question the court is getting at when it's looking at Mayo Step 1 and Mayo Step 2 is, is somebody just trying to claim an abstract concept? Are they just trying to claim the principle? And that means if it's just a calculation, the Supreme Court won't let you monopolize math. If they just claim a method of organizing human activity that's well-known, the Supreme Court's not going to let you monopolize that. And then Step 2 goes and ferrets out the cases where someone claims just one of those abstract ideas and appends purely conventional activities, meaningless steps, to try and disguise what they've done. But this has anything but just those meaningless steps for our claims. It's meaningful not just the genus we've identified, which is nowhere in the prior art that you look at the sequence, use rules based on sequence, what follows what, and timing, how the group together moves in terms of cadence, but also the specific output that you end up with a stream that's more weight sets and transition rules to move between them. That's nowhere in the prior art, and it can't be dismissed as conventional. This simply does not involve any of the concerns that animate the rule against claiming abstract ideas that the Supreme Court has articulated. The judge simply made a mistake on this one and mixed up all the tests. The judgment of the district court should be reversed and the case remanded for further proceedings. Thank you, counsel. We have all the arguments. We'll take them under consideration. This, of course, stands in recess. All rise. The Honorable Court is adjourned from day today.